### State of Vermont v. Deborah Lynn Graves

[436 A.2d 755]

No. 200-80

Present: **Barney, C.J., Larrow, Billings, Hill and Underwood, JJ.**

Opinion Filed September 1, 1981

*Mark J. Keller*, Chittenden County State's Attorney, and *Robert V. Simpson, Jr.*, Deputy State's Attorney, Burlington, for Plaintiff.

*James L. Morse*, Defender General, *William A. Nelson*, Appellate Defender, and *Ellen Cooghan*, Law Clerk (On the Brief), Montpelier, for Defendant.

**Underwood, J.** The defendant was charged with the crime of uttering a false prescription, in violation of 18 V.S.A. § 4223(e). After a trial and a jury verdict of guilty, the defendant moved for a judgment of acquittal, notwithstanding the verdict, on the ground that the State had failed to prove that the defendant knew that the prescription was false. The court denied the motion and entered a judgment of conviction on the verdict. The defendant appeals.

The appeal raises two issues: whether the State proved, beyond a reasonable doubt, that (1) the prescription was false,

and (2) the defendant offered the prescription knowing of its falsity.

On September 28, 1979, the defendant, then 22 years old, entered a pharmacy wearing a neck brace and presented a prescription. It bore the following printed notation at the top: "Central Vermont Medical Center, Inc." It was dated September 28, 1979, and was made out to Linda Ayers, of Bolton, age 23. It prescribed four milligrams of a pain killer called Dilaudid, and was purportedly signed by Dr. A. B. Bresseau. Under his signature appeared the handwritten Drug Enforcement Agency number, AB1118835.

The pharmacy knew that the Central Vermont Medical Center had reported the theft of prescription blanks from its emergency room. The owner of the pharmacy therefore became suspicious and called the police department. When a policeman arrived, the defendant explained to him that a man named Charles had asked her to get the prescription filled for his girlfriend while he did some errands. She claimed that she had danced with him at a Burlington discotheque and that he was five feet six inches tall and blonde, but that she did not know his last name or where he lived. She expressly denied any knowledge that the prescription was false.

■ The jury obviously did not believe her story, because it brought in a verdict of guilty, but the State has the burden of proving, beyond a reasonable doubt, the two essential elements of the crime charged. It must prove that the prescription was false and that the defendant offered it as genuine, knowing of its falsity. If the State fails in its burden of proof on either of these essential elements, the conviction cannot be sustained. *State* v. *Green*, 126 Vt. 311, 312, 228 A.2d 792, 793 (1967).

■ We conclude that the State did not prove beyond a reasonable doubt that the prescription was false. For that reason alone, the defendant's motion for an acquittal should have been granted. At best, the State's evidence on this issue was ambiguous and equivocal, and therefore not sufficient to satisfy the State's burden of proof. *State* v. *Carter*, 138 Vt. 264, 269, 415 A.2d 185, 188 (1980).

The State relied entirely upon the testimony of a secretary who had worked at the Central Vermont Medical Center for

the past 20 years. She testified that by a rule of the hospital, prescription blanks were available in the emergency room, only for use there, and only by those physicians admitted to practice in the hospital. She then testified that Dr. Bresseau was not listed on the hospital's list of those physicians, and that in her 20 years of employment at the hospital, she had never heard of a Dr. A. B. Bresseau. No attempt was made to show that Dr. Bresseau was not licensed to practice medicine in Vermont, or that the Drug Enforcement Agency number on the prescription was false.

The testimony of the secretary does not preclude the possibility of a licensed Vermont physician, named Dr. A. B. Bresseau, disobeying the rule of the Central Vermont Medical Center and writing a valid prescription for Linda Ayers, a legitimate patient. Nor would her testimony negate the possibility of the existence of a properly licensed Vermont physician by the name of Dr. A. B. Bresseau, whose name appears, as required by law, on the records of the Vermont State Board of Medical Practice, and in the office of the Secretary of State.

Close scrutiny of the record below indicates that there may well have been a Dr. A. B. Bresseau practicing in St. Albans, Vermont. The State did not call him as a witness because he was attending his brother's funeral, and because the court was reluctant to continue the trial.

We conclude further that the State did not prove, beyond a reasonable doubt, that the defendant offered the prescription knowing that it was false. As this is also an essential element of the crime charged, the defendant's motion for acquittal could also have been granted on this basis. *State* v. *Green, supra,* 126 Vt. at 312, 228 A.2d at 793.

Although 18 V.S.A. § 4223(e) is silent as to whether the person offering the prescription must have actual knowledge that the prescription is false, we hold that it is implicit that actual knowledge is an element of the offense. The offense of uttering a false prescription makes little sense unless actual knowledge of the falsity of the prescription is a part of it. *State* v. *Wilkins,* 17 Vt. 151, 156 (1845). Cf. *State* v. *Sidway,* 139 Vt. 480, 431 A.2d 1237 (1981) (holding that actual knowledge of an accident is an implicit element of the offense of hit and run).

. The circumstances relied upon by the State to raise an inference of knowledge on the part of the defendant as to the falsity of the prescription were insufficient, or at best, equivocal. The defendant was charged with uttering a false prescription with knowledge of its falsity. That requisite knowledge was never demonstrated beyond a reasonable doubt. *State* v. *Colby*, 139 Vt. 475, 479, 431 A.2d 462, 465 (1981).

. *Judgment and sentence vacated; judgment of acquittal entered.*